IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSEPH A. MILES, III,

    Plaintiff,

v.                                                  Civil Action No. **3:10cv162**

WILLIAM MOORE, III,

    Defendant.

## MEMORANDUM OPINION

Joseph A. Miles, III, a Virginia inmate proceeding *pro se* and *in forma pauperis*, brings this civil action pursuant to 42 U.S.C. § 1983. Miles claims that three individuals associated with Sussex II State Prison ("Sussex II")—Chaplain William Moore, Warden David B. Everett, and Regional Director David Robinson ("Defendants")—violated the First Amendment[1] and the Religious Land Use and Institutionalized Persons Act[2] ("RLUIPA") by denying Miles his right to freely exercise his religion. Defendants filed motions for summary judgment (Docket Nos. 16, 26), providing Miles with appropriate *Roseboro*[3] notice (Docket Nos. 18, 28). Miles responded. (Docket No. 29.) The matter is ripe for disposition.

---

[1] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[2] 42 U.S.C. § 2000cc-1(a)(1)–(2).

[3] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

## I. SUMMARY OF ALLEGATION

On February 22, 2010,[4] Miles filed this lawsuit against Defendants. Miles claims that Defendants violated his right to exercise his religious beliefs freely between November 7, 2009 and January 16, 2010, during which time Miles's name was not on the Master Pass List for Christian religious services at Sussex II. Miles requests declaratory and injunctive relief, one dollar of compensatory damages, and $20,000 in punitive damages.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* Fed. R. Civ. P. 56(c) and 56(e) (1986)). When reviewing a summary judgment motion, a court "must draw all justifiable inferences in favor of the nonmoving party." *United States v.*

---

[4] Pursuant to *Houston v. Lack*, 487 U.S. 266 (1988), an inmate's motion is deemed filed on the date it is handed to prison staff for mailing.

*Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Defendants have provided one affidavit from Defendant Everett, one affidavit from Defendant Moore, a copy of Virginia Department of Corrections ("VDOC") Operating Procedure 841.3 entitled "Offender Religious Programs," and one prison memorandum detailing the open enrollment process for the Master Pass List. Miles submitted several exhibits documenting his exhaustion of the prison grievance system. Additionally, Miles's complaint and brief in support thereof are sworn under penalty of perjury. In light of the foregoing principles and submissions, the following facts are established for purposes of the motion for summary judgment.

### III. SUMMARY OF PERTINENT FACTS

Miles was transferred to Sussex II in October of 2005. Within a week of Miles's arrival, Miles contacted Defendant Moore requesting to be added to the Master Pass List to attend Christian religious services. (Mem. Supp. Compl. 2.) The Master Pass List is a computer-generated list noting which offenders are authorized to move to approved programs, work assignments, school assignments, and other areas. (Mem. Supp. Everett & Robinson's Mot. Summ. J. ("Mem. Supp. Mot. Summ. J.") Att. 1 ("Everett Aff.") ¶ 8.) Over the course of the next four years, Miles attended Christian services, served as an usher, sang in the choir, served as a Study Group Coordinator, and served as a worship leader in the church. (Mem. Supp. Compl. 2.) Miles also participated in baptism and communion services when Defendant Moore conducted those services. (Mem. Supp. Compl. 2.)

On or about October 1, 2009, Miles was found guilty of being in an unauthorized area. (Everett Aff. ¶ 4.) The prison penalized Miles with twenty days in isolation. (Everett Aff. ¶ 4.)

Because inmates in isolation are not permitted to attend any program activities, prison staff removed Miles's name from the Master Pass List. (Everett Aff. ¶¶ 5, 8.)

Upon release from segregation on November 7, 2009, Miles requested Moore to restore his name to the Master Pass List of individuals allowed to attend Christian religious services. (Mem. Supp. Compl. 3, Ex. 1.) Moore, however, told Miles that Moore was unable to do so because of the prison's policy of Master Pass List open enrollment. (Mem. Supp. Compl. 3, Ex. 1.)

The open enrollment program establishes two-week periods, occurring every quarter,[5] during which time inmates may request to be added to the Master Pass List. (Everett Aff. ¶¶ 7–8.) The purpose of the open enrollment program is to reduce the administrative burden on prison staff members. (Everett Aff. ¶ 8.) Prior to implementation of the open enrollment program at Sussex II, prisoners would change their religious programming weekly and would abuse the system, causing a substantial hardship on prison staff. (Everett Aff. ¶ 8.)

On November 19, 2009, Miles submitted an informal complaint to the prison, complaining that "[t]he refusal to place [his] name on the list to attend religious services for three months substantially burden[ed] [his] right to exercise [his] religion." (Mem. Supp. Compl. Ex. 2.) The informal grievance was assigned to Defendant Moore. (Mem. Supp. Compl. Ex. 2.) Moore responded that Miles missed the October enrollment period because Miles was in isolation. (Mem. Supp. Compl. Ex. 2.) Moore provided Miles with copies of the pertinent VDOC policy and a memorandum explaining the open enrollment period.

---

[5] The open enrollment periods are January 1–15, April 1–15, July 1–15, and October 1–15. (Everett Aff. Encl. A ("Open Enrollment Memo").)

4

On December 2, 2009, Miles submitted a regular grievance. (Mem. Supp. Compl. Ex. 3.) Miles again claimed that the policy substantially burdened his right to exercise his religion. (Mem. Supp. Compl. Ex. 3.) He requested that the prison "[s]top the practice of denying people their right to attend religious services for up to three months" and also requested that the prison "add [his] name to the [M]aster [P]ass [L]ist for Christian services immediately." (Mem. Supp. Compl. Ex. 3.)

On December 22, 2009, Defendant Everett responded to Miles's regular grievance. (Mem. Supp. Compl. Ex. 4.) In his response, Everett provided Miles with a copy of the prison memorandum explaining the open enrollment program. (Mem. Supp. Compl. Ex. 4; Open Enrollment Memo.) Everett also referred Miles to the relevant VDOC procedures which dictated the prison's policy. (Mem. Supp. Compl. Ex. 4.) The relevant VDOC procedure states in pertinent part:

> A. Access to Religious Services
>
> 1. Facilities that use pass lists to control access to religious services shall develop a listing of all regularly occurring religious services in the facility separated by religion similar to *Request to Attend Religious Services* . . . . Services that serve multiple religions should be listed under each applicable religion.
>
> c. Offenders who choose not to complete a *Request to Attend Religious Services* will not be penalized. They will not be allowed to submit a *Request* or to attend the regular, ongoing facility programs or services of any religion until after submitting a *Request* during the next open enrollment period. Until such time, they may practice their faith privately/individually through prayer, meditation, reading, reflection, etc.
>
> e. An open enrollment period of two weeks shall be provided at least once each calendar quarter to allow offenders to change their selection of religious services to attend (including

5

> change of religion) by submitting a new *Request to Attend Religious Services*. Offenders making no changes to their religious services do not need to submit a *Request*.

   B.   Guidelines for Religious Group and Religious Holy Day/Season Participation

   3.   Pass lists and Program Sign-in Sheets are essential to maintain offender accountability and shall be used to control and document participation in all religious services and programs.

(Everett Aff. Encl. A ("VDOC Proc. 841.3") §§ IV.A.1, IV.B.3.) Everett explained to Miles that he could enroll during the open enrollment period from January 1–15, 2010. (Mem. Supp. Compl. Ex. 4.)

Miles appealed Everett's response for the following reason:

> The policy does not state that names can "ONLY" be added once a quarter, as it is being enforced. The words "at least once" simply sets [sic] a minimum standard for an open enrollment. It gives no guidelines for restoring names to the list who have attended services for years but had their name removed. Policy does not supplant the constitutional rights I have and cannot be justification for violating the law. Denying me the chance to attend religious service for three months is clearly unlawful[.]

(Mem. Supp. Compl. Ex. 4.)

## IV. ANALYSIS

### A.   First Amendment

"'Prison walls do not form a barrier separating prison inmates from the protections of the Constitution.'" *Lovelace v. Lee*, 472 F.3d 174, 199 (4th Cir. 2006) (*quoting Turner v. Safley*, 482 U.S. 78, 84 (1987)). Nevertheless, "[i]nmates' constitutional rights must be evaluated within the context of their incarceration." *Id.* Because "courts are ill equipped to deal with the increasingly urgent problems of prison administration" and because the administration of prisons is "peculiarly within the province of the legislative and executive branches of government," courts must defer to prison officials who oversee its many security, discipline, and administrative

functions. *Id.* (citations and internal quotation marks omitted). For this reason, the test to determine whether a prison policy violated an inmate's right to free exercise of religion is one of reasonableness. *Id.* (*citing O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). A prison regulation is "'valid if it is reasonably related to legitimate penological interests.'" *Id.* (*quoting Turner*, 482 U.S. at 89).

The Supreme Court of the United States instructs that a prison's alleged violation of an inmate's right to free exercise of religion is determined by a four-factor test. *Turner*, 482 U.S. at 89–92. Thus, the Court must determine (1) "whether there is a valid, rational connection between the regulation" and the asserted government interest; (2) whether Miles was "deprived of all forms of religious exercise or whether [he was] able to participate in other observances of [his] faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any obvious, easy alternatives to the challenged regulation." *Lovelace*, 472 F.3d at 200 (*quoting Turner*, 482 U.S. at 89–92) (internal quotations omitted). The regulation in question passes the *Turner* test.

Regarding the first question, it is uncontradicted that the open enrollment program was developed to ease the administrative burden that prisons began to experience as a result of inmates abusing the Master Pass List system. (Everett Aff. ¶ 8.) There is a valid, rational connection between limiting pass-list changes to four times a year and easing the administrative burdens on prison staff. Second, Miles was not deprived of all forms of religious exercise. Between open enrollment periods, the regulation permits inmates to "practice their faith privately/individually through prayer, meditation, reading, reflection, etc." VDOC Proc. 841.3 § IV.A.1.c. Although Miles was temporarily deprived of some congregational worship

7

opportunities, his ability to pray, study, and otherwise worship were not infringed.[6] Third, the desired accommodation would have a significant impact on prison officials. Miles requests the Defendants "halt[] the practice of **ONLY** allowing inmates to sign-up for religious programs once a quarter." (Compl. 5.) The prison operated under a policy equivalent to Miles's suggested alternative before implementing the open enrollment program. (Everett Aff. ¶ 8.) It is uncontroverted that Miles's desired accommodation would result in a more heavily burdened security staff and a drain on prison resources. (Everett Aff. ¶ 8.) Finally, Miles suggests no obvious, easy alternative other than that which was in place before the prison implemented the open enrollment program.

"'[O]nce the [prison] demonstrates that it is pursuing a legitimate governmental objective, and demonstrates some minimally rational relationship between that objective and the means chosen to achieve that objective, [the Court] must approve of those means.'" *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 468–69 (4th Cir. 1999) (quoting *Hines v. S.C. Dep't of Corr.*, 148 F.3d 353, 358 (4th Cir. 1998)). The regulation here passes muster under this test. Accordingly, Miles's First Amendment claim will be DISMISSED.

The only remaining claim arises under RLUIPA. Because RLUIPA does not permit a plaintiff to obtain monetary damages against state officials sued in their individual capacities,[7]

---

[6] Miles has not alleged any facts which suggest that the tenets of his religion require him to worship in a group setting or otherwise travel outside of his cell.

[7] The Fourth Circuit concluded that because RLUIPA did not waive Eleventh Amendment immunity of the States, it "does not authorize claims for money damages against an official who is sued in [his or] her official capacity." *Rendleman*, 569 F.3d at 187 (*citing Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006)). Furthermore, because Miles has not

8

*see Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009), the Court will DISMISS Miles's claim for monetary damages under RLUIPA.

B.     **RLUIPA**

Miles's second claim is for a violation of RLUIPA. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability." 42 U.S.C. § 2000cc-1(a). When a prisoner "produces prima facie evidence to support a claim alleging a violation" of RLUIPA, "the burden of persuasion on any element of the claim" shifts to the government, "except that the [prisoner bears] the burden of persuasion on whether the [challenged regulation] substantially burdens the [prisoner's] exercise of religion." 42 U.S.C. § 2000cc-2(b). The government must "demonstrate[] that imposition of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Congress crafted RLUIPA to create "a more searching standard of review" compared to the standard constitutional analysis. *Lovelace*, 472 F.3d at 186 (internal quotation marks omitted). The standard of review is "strict scrutiny instead of reasonableness." *Id.* (*citing Madison v. Riter*, 355 F.3d 310, 314–15 n.1 (4th Cir. 2003); *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 857–88 n.1 (5th Cir. 2004)).

---

advanced any facts suggesting that the challenged prison regulation affects interstate commerce, he cannot proceed with his claim for monetary damages under RLUIPA. *Id.* at 189; *Lee v. Gurney*, No. 3:08cv99, 2010 WL 5113782, at *10 (E.D. Va. Dec. 9, 2010); *Jabbar v. Burnett*, No. 1:09cv246(TSE/TCB), 2010 WL 3671155, at *9 (E.D. Va. Sept. 9, 2010).

Miles, then, must demonstrate that the regulation imposed a "substantial burden" on his religious exercise. The Court must answer two questions: "(1) Is the burdened activity 'religious exercise,' and if so (2) is the burden 'substantial'?" *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004).

### 1. Religious Exercise

"RLUIPA broadly defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Lovelace*, 472 F.3d at 186 (*quoting* 42 U.S.C. § 2000cc-5(7)(A)). Miles argues that the prison imposed a substantial burden on his right to practice Christianity when it did not permit him to return his name to the Master Pass List for Christian religious services after he was released from isolation. (Compl. 5.) The religious exercises which Miles contends were burdened include "participation in Bible studies, worship services, communion services, and baptismal services." (Compl. 5.) Miles also notes that between November 7, 2009 and January 16, 2010, the Chaplain held baptism and communion services, and Miles was unable "to attend Christian services . . . during which time Christians celebrated the birth of Jesus Christ." (Mem. Supp. Compl. 3.)

Under "RLUIPA's generous definition," the activities alleged to be burdened qualify as "'religious exercise.'" *Adkins*, 393 F.3d at 568. This finding requires the Court to determine if Miles has demonstrated the second element of the prima facie RLUIPA claim: whether the regulation placed a "substantial burden" on Miles's religious exercise.

### 2. Substantial Burden

"[F]or RLUIPA purposes, a substantial burden on religious exercise occurs when a state . . . 'put[s] substantial pressure on an adherent to modify his behavior and to violate his

10

beliefs.'" *Lovelace*, 472 F.3d at 187 (third alteration in original) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). This might occur if the regulation requires an inmate to "'choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand.'" *Id.* (alterations in the original) (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)).

In this case, it is clear that the regulation put "substantial pressure on [Miles] to modify his behavior." *Id.* (quoting *Thomas*, 450 U.S. at 718). For the four years prior to the time period in question, Miles swears he "faithfully and 'religiously' attended Christian services, where he has served as an usher, sang in the choir, served as a Study Group Coordinator, and as one of the worship leaders within the church." (Mem. Supp. Compl. 2.) He also "participated in the Christian sacraments of Baptism and Holy Communion." (Mem. Supp. Compl. 2.) The regulation curtailed his ability significantly—indeed, entirely—to participate in these activities from November 7, 2009 until January 16, 2010.[8]

Miles, however, has not adequately articulated, let alone put forth sufficient facts to demonstrate, that the regulation put "substantial pressure on [him] to . . . violate his beliefs.'" *Lovelace*, 472 F.3d at 187 (quoting *Thomas*, 450 U.S. at 718). Miles fails to establish the prima facie requirement that the allegedly burdened religious exercises—namely, participation in Bible studies, worship services, communion services, and baptismal services—are important "beliefs" at all. Specifically, Miles fails to offer any explanation regarding the role of the burdened

---

[8] The parties do not indicate when Miles was returned to the Master Pass List for Christian religious services. The Court presumes that, because the time frame of which Miles complains ends on January 16, 2010, Miles was able to resume his normal religious practices on that day. Fed. R. Civ. P. 56(e)(2) (permitting a court to consider an unaddressed fact as undisputed for purposes of a motion for summary judgment).

11

activities in his religious scheme. While it is clear that RLUIPA's protection extends beyond practices that are central to a religion, it is equally clear that not every infringement on a religious exercise will constitute a substantial burden. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010). "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion." *Id.* (citing *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 332 (5th Cir. 2009)); *see also Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) ("[A]t a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice."). To overcome this hurdle, Miles must "cit[e] to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A), which show that the allegedly burdened religious exercises are important "beliefs" which were violated. Miles has not done so. For this reason, the burden of persuasion has not shifted to the Defendants.[9]

---

[9] Defendants insufficiently approach the substantial burden test. Defendants argue Miles has failed to prove a substantial burden because he "has not asserted that church attendance is mandatory for his religious belief." (Mem. Supp. Mot. Summ. J. 6.) For a Court to determine whether a regulation created a substantial burden, the Court "must not judge the significance of the particular belief or practice in question." *Lovelace*, 472 F.3d at 187 n.2. This is because "RLUIPA 'bars inquiry into whether [the] belief or practice is central to a prisoner's religion.'" *Id.* (alteration in original) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)) (citing 42 U.S.C. § 2000cc-5(7)(A)). Defendants further insist that the regulation did not substantially burden Miles's religious exercises because he remained able to "pray and study the Bible to exercise his faith" by himself. (Mem. Supp. Mot. Summ. J. 6.) If communal worship is a "belief" which the regulation substantially burdens, it is irrelevant that Miles remained able to pray in isolation.

Accordingly, the Court will GRANT Defendants' motions for summary judgment. The Court will DISMISS Miles's RLUIPA claim. The dismissal of Miles's RLUIPA claim will be WITHOUT PREJUDICE to Miles's ability to pursue a future RLUIPA claim should Defendants violate his rights in the future.

An appropriate Order will accompany this Memorandum Opinion.

Date: 3-3-11
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge