IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSEPH A. MILES, III,

    Plaintiff,

v.                                                                         Civil Action No. 3:10cv162

WILLIAM MOORE, III, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Joseph A. Miles, III, a Virginia prisoner proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983 regarding events at Sussex II State Prison ("SIISP"). This matter is before the Court on Defendants'[1] Motion for Summary Judgment. Miles has replied. For the reasons stated below, the Court will GRANT Defendants' Motion for Summary Judgment and Miles's claims will be DISMISSED AS MOOT.

### I. MILES'S DEMAND FOR MONETARY RELIEF

Because this Court's disposition of Miles's demand for monetary relief does not rely on the facts or procedural history of the case, it is appropriate for the Court to address this issue prior to addressing the substance of Miles's claims. In his Complaint, Miles requests money damages in the amount of $20,000.00, "injunctive relief by halting the practice of ONLY allowing inmates to sign-up for religious programs once a quarter," and "[a]ny other relief the

---

[1] In his Complaint, Miles names the following Defendants: William Moore III, Chaplain, Sussex II State Prison; David B. Everett, Warden, Sussex II State Prison; and David Robinson, Regional Director, Eastern Regional Office. Defendants work for the Virginia Department of Corrections ("VDOC").

court deems just and appropriate." (Compl. 5.)[2] In his Opposition to Defendants' Motion for Summary Judgment, Miles clarified his claim for relief, to wit: "[Miles] is seeking declaratory[3] and inju[n]ctive relief, in addition to nominal damages of $1.00, punitive damages in the amount of $20,000.00, and all fees incurred in the filing of this action." (Opp'n Defs.' Mot. Summ. J. 1.) The doctrine of sovereign immunity, however, bars Miles's claims for money damages under the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[4] against Defendants in their official capacities. *Sossamon v. Texas*, 131 S. Ct. 1651, 1655 (2011).[5] Likewise, "when invoked as a spending clause statute, RLUIPA does not authorize a claim for money damages against an official sued in [his or] her individual capacity." *Rendelman v. Rouse*, 569 F.3d 182, 184 (4th Cir. 2009).[6] Accordingly, to the extent Miles's claims seek money damages, Defendants'

---

[2] Miles's Complaint does not include page numbers. Accordingly, the Court will refer to the page number the CM/ECF system assigned the Complaint.

[3] In his Opposition to Defendants' Motion for Summary Judgment, Miles adds the following request for declaratory relief: A statement from the Court "for the record that the Defendants did, in fact, violate [Miles's] right to freely practice his religious beliefs as protected by the RLUIPA and that at the time of the filing of this case their practiced policy was not the least restrictive means of achieving a compelling governmental interest." (Opp'n Defs.' Mot. Summ. J. 7.)

[4] 42 U.S.C. § 2000cc-1(a)(1)–(2).

[5] In *Sossamon*, the Supreme Court held "that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver." *Sossamon*, 131 S. Ct. at 1663.

[6] In *Rendelman*, the United States Court of Appeals for the Fourth Circuit noted that when Congress uses its spending power to condition funds and impose liability, "'it must do so unambiguously.'" *Rendelman*, 569 F.3d at 188 (*quoting Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). The Fourth Circuit held that Congress, using its spending power in enacting RLUIPA, "did not signal with sufficient clarity an intent to subject [officials acting under color of state law] to an individual capacity damages claim under RLUIPA." *Id.* at 189 (*citing Pennhurst State Sch. & Hosp.*, 451 U.S. at 17; *Madison v. Virginia*, 474 F.3d 118, 125 (4th Cir. 2006)). As in *Rendelman*, Miles's claim of RLUIPA jurisdiction is exclusively

2

Motion for Summary Judgment (Docket No. 53) is GRANTED and such claims are DISMISSED WITH PREJUDICE.

## II. BACKGROUND

The Master Pass List governs movement to religious services at SIISP. Inmates not on the Master Pass List may add their names only once per quarter during that quarter's two-week Open Enrollment Period by submitting a Request to Attend Religious Services form. At the time Miles filed the Complaint, the operating procedure governing offender religious programs, Virginia Department of Corrections Operating Procedure 841.3, effective date January 1, 2009 ("Operating Procedure"), required correctional officers to automatically delete the names of inmates temporarily assigned to isolation from the Master Pass List. Once released from isolation, the Operating Procedure required these post-isolation inmates to wait until the next Open Enrollment Period to submit a request form to re-add their names to the Master Pass List. Thus, the Operating Procedure effectively barred post-isolation inmates from attending religious services for up to ninety (90) days after their release from isolation.

In his Complaint, Miles stated that, due to an institutional conviction, correctional officers placed him in isolation for twenty (20) days and, per the Operating Procedure, deleted his name from the Master Pass List.[7] The Complaint asserted that, after correctional officers

---

based on SIISP's receipt of federal funds. Miles has "not advance[d] any claim that the substantial burden on his religious exercise caused by [the denial of post-isolation religious services] would 'affect . . . commerce with foreign nations, among the several States, or with Indian tribes.'" *Id.* (omission in original ) (*quoting* 42 U.S.C. § 2000cc–1(b)(2)). "Consequently, the independent commerce clause basis for RLUIPA is not properly before the court . . . , and [this Court] need not resolve whether the statute, analyzed under the commerce clause, would authorize individual capacity damages actions." *Id.*

[7] Prior to his stint in isolation, Miles regularly attended Christian services.

released Miles from isolation, Defendants violated his rights under the First Amendment[8] and RLUIPA by forcing him to wait until the next Open Enrollment Period to re-add his name to the Master Pass List. Defendants' adherence to the Operating Procedure, argued Miles, impermissibly prevented him from attending any religious services between the time correctional officers released him from isolation and the next Open Enrollment Period. During the next Open Enrollment Period, Miles promptly re-added his name to the Master Pass List and resumed attending Christian services.

On March 3, 2011, by Memorandum Opinion and Order, the Court granted Defendants' Motion for Summary Judgment and dismissed Miles's claims.[9] *Miles v. Moore*, No. 3:10cv162, 2011 WL 837164, at *7 (E.D. Va. Mar. 3, 2011). Miles appealed this decision to the Fourth Circuit. On October 19, 2011, the Fourth Circuit affirmed this Court's dismissal of Miles's First Amendment claim and vacated this Court's dismissal of Miles's RLUIPA claim. *Miles v. Moore*, 450 F. App'x 318, 320 (4th Cir. 2011).

In its October 19, 2011 opinion, the Fourth Circuit held that the record established that Defendants placed a substantial burden on Miles's religious exercise within the meaning of RLUIPA. *Id.* Accordingly, the Fourth Circuit vacated the dismissal of Miles's RLUIPA claim and ordered this Court to "evaluate whether the open enrollment policy is the least restrictive means to further a compelling governmental interest." *Id.*

---

[8] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I.

[9] In the March 3, 2011 Memorandum Opinion, the Court held that Miles failed to show that "the allegedly burdened religious exercises [were] important 'beliefs'" within the meaning of RLUIPA. *Miles*, 2011 WL 837164, at *6. Consequently, the Court reasoned, Miles could not establish a substantial burden upon his religious exercise. Thus, Miles failed to shift the burden to Defendants to demonstrate that the burden furthers a compelling governmental interest by the least restrictive means. *Id.* Accordingly, the Court dismissed Miles's RLUIPA claim.

4

By Memorandum Opinion and Order issued on February 21, 2012, this Court ordered Defendants "to submit a motion for summary judgment supporting their position that the open enrollment policy furthers a compelling governmental interest and is the least restrictive means of furthering that interest." (Feb. 21, 2012 Mem. Op. 2.) On March 22, 2012, Defendants filed a Motion for Summary Judgment. Defendants, however, did not address whether their procedures constitute the least restrictive means for furthering a compelling state interest. Rather, Defendants assert that they have revised the Operating Procedure governing the Master Pass List such that Miles's claim is now moot. Miles challenges this assertion.

### III. SUMMARY JUDGMENT MOTION

#### A. Summary Judgment Standard

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251. "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party ... upon whom the *onus* of proof is imposed." *Id.* (internal quotation marks omitted).

Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n. 7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). In support of their Motion for Summary Judgment, Defendants submit the affidavit of Defendant David Robinson (Mem. Supp. Mot. Summ. J. Attach. 1 ("Robinson Aff.")) and a copy of the Operating Procedure revised March 1, 2012 (Robinson Aff. Encl. A ("Revised Operating Procedure")).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Unsworn argument contained in memoranda does not constitute evidence. *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). Miles's submissions run afoul of these rules. In response to Defendants' motion, Miles submits an unsworn memorandum (Opp'n Defs.' Mot. Summ. J. (Docket No. 56)) and two unsworn documents which he terms "affidavits."[10] (Opp'n Defs.' Mot. Summ. J. 1.)

---

[10] Neither of these documents contains a certification that the affiant signed the affidavit under penalty of perjury and understood that he or she may be prosecuted if the facts set forth are untrue. Furthermore, neither document indicates that the affiant swore to the truth of the

Accordingly, the Court will not consider the allegations in these documents in connection with Defendants' Motion for Summary Judgment. *Washington v. City of Charlotte*, 219 F. App'x 273, 277 (4th Cir. 2007) (*citing Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)).

In light of the foregoing principles, the following facts are established for the purposes of the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Miles.

**B.     The Revised Operating Procedure**

The Virginia Department of Corrections revised Operating Procedure 841.3 effective March 1, 2012 ("Revised Operating Procedure"). Under the Revised Operating Procedure, correctional officers no longer automatically delete the names of inmates assigned to isolation or other Special Housing Units from the Master Pass List. (*See* Revised Operating Procedure § IV.A.1.b.iii.) Rather, offenders "remain on the master pass list for the selected religious groups until they submit a new *Request* [to Attend Religious Services form]." (*Id.*) "Offenders should not be removed from the master pass list because of temporary inactivity due to temporary transfer or assignment to special housing." (*Id.* § IV.A.1.b.iii.a.) As an additional safeguard, inmates whose names are removed by mistake may immediately "submit a new *Request To Attend Religious Services* within the first 2 weeks after returning to general population." (*Id.* § IV.A.1.b.iii.b; Robinson Aff. ¶ 4.) However, "[o]ffenders will still only be permitted to initially sign up for religious services and change religious service participation during the open enrollment period every quarter." (Robinson Aff. ¶ 5; Revised Operating Procedure § IV.A.1.b.ii.)

---

document before a notary public. Miles has, however, submitted a Memorandum dated March 27, 2012 written by Defendant Moore which constitutes admissible evidence. (Opp'n Defs.' Mot. Summ. J. Ex. G, at 2 ("March 27, 2012 Mem.").)

# IV. THE MOOTNESS OF MILES'S CURRENT CLAIM

"Because the requirement of a continuing case or controversy stems from the Constitution, it may not be ignored for convenience's sake." *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007) (*citing United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920)). "[F]ederal courts have 'no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Id.* (*quoting Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). In this regard, "'[t]he requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence.'" *Id.* (omission in original) (*quoting Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).

At the inception of this case and while on appeal, Miles certainly had a personal interest in Sussex II's open enrollment policy. Miles "argue[d] that . . . Sussex II's policy permitting additions to the Master Pass List only during quarterly open enrollment periods placed a substantial burden on his religious exercise." *Miles v. Moore*, 450 F. App'x 318, 319 (4th Cir. 2011). Miles explained that he "was removed from the Master Pass List when he was penalized with twenty days in isolation for being in an unauthorized area; when he was released from isolation, [his] request to be placed back on the Master Pass List to attend Christian services was denied because it was not made during an open enrollment period." *Id.*

The record reflects that, as revised, the policy of permitting additions to the Master Pass List only during a quarterly open enrollment period ("the open enrollment policy"), no longer poses any threat to Miles's ability to attend Christian religious services or otherwise exercise his

faith.¹¹ *See DeMoss v. Crain*, 636 F.3d 145, 150–151 (5th Cir. 2011) (holding that when prison system discontinued the policy of preventing general-population prisoners on cell restriction from attending religious services, plaintiff's complaint concerning this policy was moot); *Incumaa*, 507 F.3d at 287 ("'As applied' does not mean 'as it used to apply,' but rather 'as it continues to apply.'"). Miles is on the Master Pass List for Christian services, and the evidence before the Court does not indicate any institutional infraction will result in his removal from the Master Pass List. Thus, Miles would not benefit from any injunction to the open enrollment policy or any declaration that the open enrollment policy, prior to the revisions, violated RLUIPA.¹² *Id.*; *see id.* ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." (*quoting Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir.1983))). Because Miles no longer has a personal stake in whether the open enrollment policy passes muster under RLUIPA, "this case is no longer the live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." *Id.* (internal quotations omitted). Accordingly, Miles's claim for injunctive and declaratory relief under RLUIPA will be DISMISSED AS MOOT.

## V. MILES'S NEW ALLEGATION

The following allegations are not facts established for the purpose of summary judgment. Rather, they are arguments from Miles's unsworn memorandum supported by unsworn

---

¹¹ "While it is well established that the voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit," *United States v. Jones*, 136 F.3d 342, 348 (4th Cir. 1998) (*citing Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 71–72 (1983)), the record contains no evidence demonstrating a reasonable likelihood that SIISP intends to reinstate the policy originally challenged by Miles. *See id.* (*quoting United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

¹² In his Complaint, Miles sought injunctive relief in the form of "halting the practice of **ONLY** allowing inmates to sign-up for religious programs once a quarter." (Compl. 5.)

statements from Miles's fellow prisoners. Although the claims stated in Miles's Complaint are moot, it appears to the Court that, in his Opposition to Defendants' Motion for Summary Judgment, Miles is attempting to state a new claim, to wit: that SIISP's policy of requiring post-isolation inmates to spend ninety days in a Structured Living Unit, where they are denied religious services, violates his right to free-exercise under RLUIPA. Specifically, Miles alleges:

> [SIISP] is one of the [VDOC] institutions that are currently approved by Defendant Robinson to operate a Structured Living Unit [("SLU")]. Upon being released from [isolation] back to general population, inmates are assigned to one of the two pods that are designated structured living. In these SLU pods, where inmates are required to remain for a minimum of ninety days, Plaintiff would not be allowed to have his name on the Master Pass List to attend Christian service. According to members of the administration at SIISP, recent changes to the open enrollment policy will have no affect [sic] on the practice of prohibitting [sic] SLU inmates the right to practice their religious beliefs.

(Opp'n Defs.' Mot. Summ. J. 5.)[13] Although Miles contends that the potential restriction the SLU policy places upon his religious exercise are similar to the claim raised in the complaint, no claim based on the SLU is before the Court. *See Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007).[14] If Miles wishes the Court to examine this new claim, he must place it squarely within the Court's jurisdiction by filing a new action.

---

[13] A March 27, 2012 Memorandum, written twenty-six days after the Revised Operating Procedure went into effect, supports this assertion stating: "Please be advised that you will not be able to attend regular religious services while in Structured Living according to [VDOC] policy 841.7, IV.D." (March 27, 2012 Mem. 1.)

[14] *Incumaa* is remarkably similar to the instant case. In *Incumaa*, the prisoner-plaintiff challenged a policy restricting the availability of books and magazines during the time authorities assigned the prisoner-plaintiff to a high-security housing unit. *Incumaa*, 507 F.3d at 284. The district court granted defendants' motion for summary judgment and the prisoner-plaintiff appealed. *Id.* at 284–85. During the pendency of the appeal, authorities reassigned the prisoner-plaintiff to a lower security housing unit. *Id.* at 285. Nevertheless, a similar publications restriction still applied to the prisoner-plaintiff in this lower-security unit. *Id.* The Fourth Circuit held that the fact that the prisoner-plaintiff,

## VI. CONCLUSION

Defendants' Motion for Summary Judgment (Docket No. 53) will be GRANTED. Miles's claim for monetary damages under RLUIPA will be DISMISSED. Miles's demand for injunctive relief under RLUIPA with respect to the open enrollment policy will be DISMISSED AS MOOT. The action will be DISMISSED.

An appropriate Order shall issue.

Date: Oct. 10, 2012
Richmond, Virginia

/s/
Henry E. Hudson
United States District Judge

---

remains subject to a similar publications ban in the [lower security unit] is of no moment. Incumaa's complaint *only* challenges [the policy affecting the high-security unit], not [the policy affecting the lower security unit], which is unsurprising given that the [lower security unit] ban did not even exist at the time Incumaa brought this action. And, contrary to Incumaa's suggestion [the two policies] are not one in [sic] the same.

*Id.* at 287. Thus, "[g]iven that Incumaa no longer is subject to the [high-security] publications ban," the Fourth Circuit declared his claims moot. *Id.* at 289.

11